No. 26-7304

UNITED STATES OF AMERICA,
*Plaintiffs-Appellants*,

v.

STATE OF ALASKA, *et al.*,
*Defendants-Appellees*,

RISÉ ROY, *et al.*,
*Intervenor-Defendants-Appellees*,

MARY FOR ALASKA, *et al.*,
*Intervenor-Defendants-Appellees*,

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA**

No. 26-cv-00376-SLG
The Hon. Sharon L. Gleason

# RISÉ ROY, JAN JAKUB GRZEDA, LEAGUE OF WOMEN VOTERS OF ALASKA, AND COMMON CAUSE'S MOTION FOR SUMMARY AFFIRMANCE

Eric Glatt
Cindy Woods
ACLU of Alaska Foundation
P.O. Box 90744
Anchorage, AK 99509
(907) 258-0044
eglatt@acluak.org

Ari J. Savitzky
Ming Cheung
Theresa J. Lee
Garrett Muscatel
Sophia Lin Lakin
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org

*Counsel for Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

STATEMENT OF THE CASE .......... 3

I. LEGAL BACKGROUND .......... 3

A. The Elections Clause .......... 3

B. The National Voter Registration Act .......... 4

II. FACTUAL BACKGROUND .......... 5

LEGAL STANDARD .......... 10

ARGUMENT .......... 11

I. THE UNITED STATES' NVRA-BASED CLAIMS ARE UTTERLY MERITLESS. .......... 11

A. The United States Has No Viable NVRA Claim. .......... 11

B. The United States Has No Viable Claim Under the Supremacy Clause. .......... 17

C. The United States Sought Illegal Relief. .......... 20

II. THE COURT SHOULD ALSO SANCTION THE UNITED STATES FOR FILING A FRIVOLOUS APPEAL. .......... 23

CONCLUSION .......... 26

CERTIFICATE OF COMPLIANCE .......... 27

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) .... 4, 12, 18

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) .... 18

*Berger v. United States*,
295 U.S. 78 (1935) .... 25

*Bullock v. Carter*,
405 U.S. 134, 145 (1972) .... 15

*Chamber of Commerce v. Whiting*,
563 U.S. 582 (2011) .... 19

*ConocoPhillips Alaska, Inc. v. Alaska Oil & Gas Conservation Commission*,
177 F.4th 964 (9th Cir. 2026) .... 19

*Convergence Corp. v. Sony Corp. of America*,
681 F.2d 622 (9th Cir. 1982) .... 25

*Daniels-Hall v. National Education Association*,
629 F.3d 992 (9th Cir. 2010) .... 22

*Dillon v. United States*,
184 F.3d 556 (6th Cir. 1999) .... 10

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .... 14

*El Comite Para El Bienestar de Earlimart v. Warmerdam*,
539 F.3d 1062 (9th Cir. 2008) .... 14

*Ex parte Siebold*,
100 U.S. 371 (1880) .... 18

*Foster v. Love*,
522 U.S. 67 (1997) .... 3, 15

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) .... 18

*In re Volkswagen "Clean Diesel" Marketing., Sales Practices, & Products Liability Litigation*,
959 F.3d 1201 (9th Cir. 2020) .......... 19

*In re Westwood Plaza N.*,
889 F.3d 975 (9th Cir. 2018) .......... 25

*Kansas v. Garcia*,
589 U.S. 191 (2020) .......... 19

*Kramer v. Union Free School District No. 15*,
395 U.S. 621 (1969) .......... 20

*Learning Resources, Inc. v. Trump*,
607 U.S. 229 (2026) .......... 15

*Lindsay v. Bowen*,
750 F.3d 1061 (9th Cir. 2014) .......... 15

*Lindsey v. Starwood Hotels & Resorts Worldwide Inc.*,
409 F. App'x 77 (9th Cir. 2010) .......... 11

*McIntyre v. Ohio Elections Commission*,
514 U.S. 334 (1995) .......... 21

*McLemore v. Landry*,
898 F.2d 996 (5th Cir. 1990) .......... 10

*National Council of La Raza v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015) .......... 12

*Newberry v. United States*,
256 U.S. 232 (1921) .......... 21

*People Not Politicians v. Onder*,
No. 26A388, 2026 WL 2883222 (U.S. Sept. 25, 2026) .......... 23

*Republican Party of State of Connecticut v. Tashjian*,
770 F.2d 265 (2d Cir. 1985) .......... 21

*Rodriguez v. United States*,
480 U.S. 522 (1987) .......... 14

*Sanowski v. Ford Motor Credit Co.*,
59 F. App'x 988 (9th Cir. 2003) .......... 10

*Scanlan v. Coalition for Open Democracy*,
No. 26A512, 2026 WL 3167846 (U.S. Oct. 22, 2026) .......... 23

*Shelby County v. Holder*,
570 U.S. 529 (2013) .......... 3

*State, Divison of Elections v. Sullivan*,
No. S-19935 (Alaska June 29, 2026) .......... 6

*Sullivan v. State, Divison of Elections*,
No. 3AN-26-07485CI (Alaska Sup. Ct. June 26, 2026) .......... 6

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) .......... 15

*Torres v. Oakland Scavenger Co.*,
487 U.S. 312 (1988) .......... 10

*U.S. Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995) .......... 4

*United States v. Alaska*,
No. 3:26-CV-00376-SLG, 2026 WL 3271034 (D. Alaska Nov. 1, 2026) .......... 9, 21

*United States v. Classic*,
313 U.S. 299 (1941) .......... 20

*United States v. Hooton*,
693 F.2d 857 (9th Cir. 1982) .......... 10

*Virginia Uranium, Inc. v. Warren*,
587 U.S. 761 (2019) .......... 18, 19, 20

*Watson v. Republican National Committee*,
609 U.S. 672 (2026) .......... 15

*Whitman v. American Trucking Association*,
531 U.S. 457 (2001) .......... 14

*Zavesky v. Town of Schererville*,
940 F.2d 666 (7th Cir. 1991) .......... 10

**Statutes**

18 U.S.C. § 592 .......... 22

18 U.S.C. § 594 .......... 22

18 U.S.C. § 595 .......... 22

52 U.S.C. § 10307 .......... 22

52 U.S.C. § 20501 .......... 1, 4, 5, 12

52 U.S.C. § 20503 .......... 4, 11

52 U.S.C. § 20504 .......... 4, 11

52 U.S.C. § 20505 .......... 4, 12

52 U.S.C. § 20506 .......... 4

52 U.S.C. § 20507 .......... 4, 12

52 U.S.C. § 20508 .......... 4, 12

52 U.S.C. § 20509 .......... 4, 12

Alaska Stat. § 15.15.450 .......... 21

Alaska Stat. § 15.20.081 .......... 6

**Other Authorities**

Aaron Rupar (@Atrupar.com), Bluesky (Oct. 23, 2026), https://perma.cc/CN37-N5DQ. .......... 24

U.S. Department of Justice (@TheJusticeDept), X (Oct. 30, 2026), https://perma.cc/4VJK-KD9V .......... 22

U.S. Department of Justice Civil Rights Divison, *The National Voter Registration Act of 1993 (NVRA)*, (updated Nov. 1, 2024), https://perma.cc/A2DX-WMRY .......... 16

**Rules**

Circuit R. 3-6 .......... 10

Fed. R. App. P. 38 .......... 25

Fed. R. App. P. 3(c) .......... 9, 10

Fed. R. Civ. P. 12 .......... 11

**Constitutional Provisions**

Alaska Const. art. V, § 3.......... 21

U.S. Const. amend. XVII.......... 21

U.S. Const. art. I, § 4, cl. 1 .......... 3

U.S. Const. art. VI, § 2 .......... 18

## INTRODUCTION

Ten days before the November general election, the United States sued the State of Alaska under the National Voter Registration Act (NVRA), 52 U.S.C. § 20501, *et seq*. It claimed that the presence of two similarly named U.S. Senate candidates on the ballot threatened the very "integrity of the electoral process." On that basis it asked the district court to indefinitely block certification of the election "if . . . [the incumbent] Senator Sullivan does not win" and to conduct an open-ended "investigation" into voters' intentions while preventing their ballots from being counted.

This appeal does not require full briefing. The legal theory advanced by the United States here is embarrassing and indefensible. The Court should summarily affirm and then order the attorneys for the United States to explain why they or their client should not be sanctioned for pursuing a frivolous appeal.

The NVRA, the only basis for the United States' claims, is a statute that relates solely to voter registration—not to voter confusion, ballot placement, vote counting, or certification. The United States never cited any of the NVRA's substantive provisions in its pleadings, let alone

attempted to describe a violation. Rather, its legal theory is based entirely on its supposed authority to protect the "integrity of the electoral process," a phrase lifted from the NVRA's prefatory "Findings and purposes" section. There is no case, statute, or legal or constitutional principle that could support this grotesque reasoning, whereby a snippet from the "Findings and purposes" section of a 1993 voter registration statute would give the federal executive imperial oversight over all matters of purported election integrity across the Nation.

And even if the United States were within shouting distance of a valid legal theory, summary affirmance would still be proper. The relief sought—indefinitely blocking the certification of an ongoing U.S. Senate election and running an inquisition into individual voters' true intentions—was and remains completely illegal. It would disenfranchise voters. It would violate the right to a secret ballot. It would deter people from exercising their franchise for fear of government interrogation. And it would dramatically contravene the *Purcell* principle, which prevents federal courts from intruding on the machinery of state elections at the last minute even when there is an actual legal basis for doing so, never mind when there is none whatsoever.

The Department of Justice's apparent desire to enter the election-season political fray is no substitute for a legitimate legal theory, and it cannot justify a shameful attempt to hold Alaskans' votes hostage. The Court's resources would be efficiently spent on a swift and forceful order summarily affirming the district court's dismissal of this action. And the rule of law would be well-served by a further order requiring the attorneys who advanced this frivolous appeal to explain why they should not be sanctioned.

## STATEMENT OF THE CASE

### I. LEGAL BACKGROUND

#### A. The Elections Clause

The Framers gave the states responsibility for setting the rules for federal elections, delegating "broad powers to determine the conditions under which the right of suffrage may be exercised." *Shelby Cnty. v. Holder*, 570 U.S. 529, 543 (2013) (quoting *Carrington v. Rash*, 380 U.S. 89, 91 (1965)). The Constitution's Elections Clause operates as "a default provision; it invests the States with responsibility for the mechanics of congressional elections" unless and until Congress decides to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see* U.S. Const. art. I, § 4, cl. 1. The Framers thus acknowledged that it is *states*

who possess the authority to protect the "integrity and regularity" of the election process in the first instance. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 835 (1995).

### B. The National Voter Registration Act

Congress enacted the NVRA in 1993 to regulate voter registration. In particular, Congress "erected a complex superstructure of federal regulation atop state voter-registration systems." *Arizona v. Inter Tribal Council of Ariz., Inc.* (*ITCA*), 570 U.S. 1, 5 (2013). Congress required states to make voter registration available by mail, in person, and when applying for a driver's license or interacting with certain state agencies, 52 U.S.C. §§ 20503, 20504, 20505, 20506; enacted rules restricting when and how states manage voter registration lists, *id.* § 20507; established a single federal form for voter registration, *id.* § 20508; and required a chief election official in each state to coordinate these responsibilities, *id.* § 20509. None of the NVRA's provisions have anything to do with which candidates are on the ballot, how to discern voter intent, or when or how to certify election results.

In addition to its substantive requirements, the NVRA also contains a prefatory "Findings and purposes" section. 52 U.S.C. § 20501.

Congress's "Findings" include acknowledgements that the right to vote "is a fundamental right" and that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation," *id.* § 20501(a). Its "purposes" include:

> (1)"to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
>
> (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
>
> (3) to protect the integrity of the electoral process; and
>
> (4) to ensure that accurate and current voter registration rolls are maintained."

52 U.S.C. § 20501(b). The remainder of the chapter sets forth the NVRA's voter-registration-related requirements.

## II. FACTUAL BACKGROUND

This case does not involve voter registration. Rather, it involves the candidates on the ballot for U.S. Senate in Alaska's November 3, 2026 General Election.

One of the U.S. Senate candidates on the ballot is named Daniel J. Sullivan, Jr., a similar name to that of the incumbent U.S. Senator, Dan S. Sullivan, who is also on the ballot. Am.Compl. ¶¶ 1, 3, 34, D.Ct.Dkt.43.

In June, the Alaska Republican Party filed a complaint with the Alaska Division of Elections seeking to remove Daniel J. Sullivan, Jr. from the ballot, arguing that his candidacy was a bad faith effort to confuse voters. *Id.* ¶ 24; Am.Compl. Ex. A, D.Ct.Dkt.43-1. The Division agreed and ordered Daniel J. Sullivan, Jr. to be excluded from the ballot. *Id.*

Daniel J. Sullivan, Jr., filed suit and the Alaska Superior Court entered an injunction requiring the Division to include his name on the ballot, concluding that the Division lacked authority to add a "good-faith" qualification and that it was not proven that the challenger was not acting in good faith. *Sullivan v. State, Div. of Elections*, No. 3AN-26-07485CI (Alaska Sup. Ct. June 26, 2026); *see also* Am.Compl. ¶ 26. The Alaska Supreme Court summarily affirmed. *State, Div. of Elections v. Sullivan*, No. S-19935 (Alaska June 29, 2026); *see also* Am.Compl. ¶ 26. The United States did not seek to intervene in that case, and no appeal was taken to the United States Supreme Court.

Following the Alaska courts' resolution of this controversy, ballots were printed and sent to voters across the State. Am.Compl. ¶ 28; *see also* Alaska Stat. § 15.20.081. The ballot labeled Senator Dan S. Sullivan

as the “Incumbent” and listed “(Registered Republican)” next to his name. Am.Compl. ¶ 34.



State of Alaska Official Ballot
November 3, 2026
General Election

Federal Only

301

A candidate's designated affiliation does not imply that the candidate is nominated or endorsed by the political party or group or that the party or group approves of or associates with that candidate, but only that the candidate is registered as affiliated with the political party or political group.

**Instructions:**

- Do not use red ink or a pencil to mark your ballot.
- Rank as many or few candidates as you like.
- Completely fill in no more than one oval for each candidate or column.
- For your 1st choice, fill in the oval in the first choice column.
- For your 2nd choice, fill in the oval in the 2nd choice column.
- For your 3rd choice, fill in the oval in the 3rd choice column, and so on.
- **If you make a mistake, you can ask for a new ballot.**

**United States Senator**

| | 1st Choice | 2nd Choice | 3rd Choice | 4th Choice | 5th Choice |
|---|---|---|---|---|---|
| **Heikes, Gerald L.** (Registered Republican) | ○ 1 | ○ 2 | ○ 3 | ○ 4 | ○ 5 |
| **Peltola, Mary** (Registered Democrat) | ○ 1 | ○ 2 | ○ 3 | ○ 4 | ○ 5 |
| **Sullivan, Daniel J. Jr.** | ○ 1 | ○ 2 | ○ 3 | ○ 4 | ○ 5 |
| **Sullivan, Dan S.** (Registered Republican) Incumbent | ○ 1 | ○ 2 | ○ 3 | ○ 4 | ○ 5 |
| **Write-in:** | ○ 1 | ○ 2 | ○ 3 | ○ 4 | ○ 5 |

*Id.*

Months later, just 10 days before the November election, and after ballots had been sent out and early voting had begun, the United States filed the underlying civil action, claiming that the inclusion of Daniel J. Sullivan, Jr., would cause “confusion” amounting to a violation of the legislative purpose section of the NVRA. *E.g.*, Am.Compl. ¶¶ 45, 50. For relief, the United States asked the district court to intervene in Alaska’s imminent election and indefinitely block the certification of the result “if . . . Senator Sullivan does not win the election,” and to engage in an indefinite and unspecified “investigation” of whether “Senator Sullivan

would have won the election" under Alaska's ranked-choice voting system absent the supposed confusion. *Id.* ¶¶ 50, 56-57.

Appellees the League of Women Voters of Alaska (LWVAK) and Common Cause are two of Alaska's largest non-partisan civic groups, and Risé Roy and Jan Jakub Grzeda are Alaska voters who cast ballots in the election. Roy Decl. ¶ 3, D.Ct.Dkt.6-2; Grzeda Decl. ¶ 3, D.Ct.Dkt.6-3; Moore Decl. ¶¶ 3-9, D.Ct.Dkt.6-4; Nunez Decl. ¶¶ 3-6, D.Ct.Dkt.6-5. The day after the United States filed this action, these Appellees intervened to preserve the rights of all Alaska voters. Partisan entities aligned with the Democratic Party (the DSCC Intervenors) also intervened, and the State of Alaska appeared. *See* D.Ct.Dkts.5, 16-18. The district court granted intervention and granted expedited briefing on motions to dismiss filed by the LWVAK Intervenors, the DSCC Intervenors, and the State of Alaska. Order at 5-8, D.Ct.Dkt.35.

The United States responded by amending its pleadings, including new allegations drawn from a news report that the DSCC Intervenors "orchestrated [Dan. J. Sullivan Jr.'s] sham campaign for the purpose of misleading Alaskan voters and getting Peltola elected." Am.Compl. ¶¶ 2, 41. The Amended Complaint also added a second claim styled as an

"Obstacle Preemption" claim under the Supremacy Clause, but again relying on the NVRA. *Id.* ¶¶ 51-55. The motions to dismiss were then renewed. D.Ct.Dkts.60, 57, 55.

On November 1, 2026, the district court granted the motions to dismiss, concluding that the United States lacked standing as it had not identified any lawful redress for its supposed injuries. *United States v. Alaska*, No. 3:26-CV-00376-SLG, 2026 WL 3271034, at *7 (D. Alaska Nov. 1, 2026). The court found that the United States offered "no explanation of how its request for ballot segregation and a court-ordered investigation by law enforcement officers into certain voters' intent could be implemented while preserving the secrecy of the ballot." *Id.* at *5. It also found that, even if lawful, the requested relief was unadministrable and would itself "result in voter 'confusion and consequent incentive to remain away from the polls'" if attempted. *Id.* at *5, *7 (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006)).

The United States immediately filed a notice of appeal.[1]

---

[1] A notice of appeal must, among other things, "name the court to which the appeal is taken." Fed.R.App.P.3(c)(1)(C). The notice of appeal filed in this case nowhere mentions this Court. *See* D.Ct.Dkt.81. To the extent that this Court lacks appellate jurisdiction, immediate dismissal is the proper course. *See Sanowski v. Ford Motor Credit Co.*, 59 F. App'x 988,

## LEGAL STANDARD

"At any time prior to the completion of briefing in a civil appeal or petition for review, if the Court determines . . . that it is manifest that the questions on which the decision in the appeal or petition for review depends are so insubstantial as not to justify further proceedings; the Court may, upon motion of a party, or after affording the parties an opportunity to show cause, issue an appropriate dispositive order." Circuit R. 3-6. "[A] motion to affirm a final judgment should be filed only where 'it is manifest that the questions on which the decision of the cause depends are so unsubstantial as not to need further argument.'" *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (per curiam) (citation omitted). "Where the outcome of a case is beyond dispute, a motion for summary disposition is of obvious benefit to all concerned." *Id.*

---

989 (9th Cir. 2003) (unpublished); *cf. Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988).

However, because there is no other appellate court to which an appeal might have been taken, it may be said that the United States has functionally complied with Rule 3(c). *See Dillon v. United States*, 184 F.3d 556, 557 (6th Cir. 1999) (en banc); *Zavesky v. Town of Schererville*, 940 F.2d 666 (7th Cir. 1991); *McLemore v. Landry*, 898 F.2d 996, 999 (5th Cir. 1990). Accordingly, the Court can proceed to the merits and summarily affirm.

In reviewing a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, this Court "may affirm on any ground supported by the record." *Lindsey v. Starwood Hotels & Resorts Worldwide Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010) (citing *McCormick v. Adams*, 621 F.3d 970, at 975 (9th Cir. 2010)). The Court may thus affirm a dismissal for lack of standing under Rule 12(b)(1) on grounds that sound in failure to state a claim under Rule 12(b)(6). *Id.*

## ARGUMENT

### I. THE UNITED STATES' NVRA-BASED CLAIMS ARE UTTERLY MERITLESS.

#### A. <u>The United States Has No Viable NVRA Claim.</u>

The NVRA does not contain any provisions whatsoever relating to candidate qualifications, ballot arrangement, vote-counting, or voter intent. It does not authorize federal courts to block certification of an election, embargo ballots, or second-guess election results.

Rather, the NVRA addresses voter registration practices. Every one of its substantive provisions relates to voter registration and the maintenance of voter rolls by the states. 52 U.S.C. § 20503 ("National procedures for voter registration for elections for Federal office"); *id.* § 20504 ("Simultaneous application for voter registration and application

for motor vehicle driver's license”); *id.* § 20505 (“Mail registration”); *id.* § 20506 (“Voter registration agencies”); *id.* § 20507 (“Requirements with respect to administration of voter registration”); *id.* § 20508 (authorizing creation of a uniform federal voter registration form); *id.* § 20509 (“Designation of chief State election official” who is responsible for coordinating the state’s voter-registration-related responsibilities). It is literally called the “National Voter Registration Act.” Pub. L. No. 103-31, 107 Stat. 77. Courts have consistently acknowledged this statutory reality, referring to the statute as “a comprehensive statute designed *to facilitate voter registration.*” *Nat’l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015) (emphasis added), *overruled on other grounds by Ariz. All. for Retired Am. v. Mayes*, 186 F.4th 622 (9th Cir. 2026); *see also ITCA*, 570 U.S. at 5 (NVRA “requires States to provide simplified systems for *registering to vote*” (citation omitted) (emphasis added)).

The United States’ first and primary cause of action purportedly arises under the NVRA. *See* Am.Compl. ¶¶ 43-50. But the Amended Complaint contains no allegations that Alaska engaged in any practice inconsistent with any of the NVRA’s substantive provisions. *See id.*

Indeed, the Amended Complaint does not relate to Alaska's voter registration practices at all. Instead, its sole focus is supposed "confusion" due to candidates with similar names being on the ballot for the election for U.S. Senate, which the United States claimed would justify blocking the certification of a duly-held election in order to hold some type of unspecified, statewide inquest into the intention of every voter who cast a ballot for someone named Sullivan. *E.g.*, *id.* ¶¶ 48-50.

The only provision of the NVRA that the United States invokes to support its NVRA claim is the statute's "Findings and purposes" section, which says, among many other things, that "[t]he purposes of this chapter" include "to protect the integrity of the electoral process." Am.Compl. ¶¶ 4, 16, 45, 54 (quoting 52 U.S.C. § 20501(b)(3)). The United States' legal theory is evidently that state practices which are inconsistent with the federal executive's vision for "the integrity of the electoral process" violates the NVRA, notwithstanding the absence of any connection to voter registration or any substantive enactment of Congress.

The NVRA says nothing of the sort. The statute's "Findings and purposes" section is not an independent source of enforcement power and

does not create any federal rights at all. It is a "settled principle of law . . . that the preamble cannot control the enacting part of the statute in cases where the enacting part is expressed in clear, unambiguous terms." *Dist. of Columbia v. Heller*, 554 U.S. 570, 578 n.3 (2008) (citation omitted). At most, where text is ambiguous, the "Findings and purposes" section of the statute may give context to its substantive provisions. *E.g.*, *id*. But "unlike the statute's operative part," a statute's preamble does not "'prescribe rights and duties and otherwise declare the legislative will,' nor does it 'enlarge or confer powers on administrative agencies or officers.'" *El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008) (citation omitted); *see also Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (per curiam).

Here, the United States' reading of the NVRA is entirely unmoored from the statute's substantive provisions and contrary to any semblance of what Congress authorized. It would turn a mousehole phrase from the prefatory section of a highly technical voter registration law into a source of mammoth power for the federal executive over "election integrity" writ large. *See, e.g.*, *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *see also, e.g.*, *Learning Res., Inc. v. Trump*, 607 U.S. 229, 230

(2026). This lawless approach to statutory construction would also defy federalism principles and the Elections Clause, which gives the federal executive no independent power to regulate state-run elections in the absence of a specific legislative intervention by Congress. *See, e.g.*, *Watson v. RNC*, 609 U.S. 672, 697 (2026); *Foster*, 522 U.S. at 69.

At no point below did the United States cite any case or principle to support its abuse of the NVRA or its slapdash approach to statutory interpretation. The only cases it relied on are constitutional ballot access cases like *Bullock v. Carter*, which affirm that *states* have broad discretion over how to manage their own ballots. 405 U.S. 134, 145 (1972) ("a *State* has an interest . . . to protect the integrity of its political processes from frivolous or fraudulent candidacies." (emphasis added)) (cited in Am.Compl. ¶¶ 3, 38, 39 and U.S. MTD Opp., D.Ct.Dkt.67 at 13-17); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) (cited in U.S. MTD Opp. at 14); *Lindsay v. Bowen*, 750 F.3d 1061, 1064 (9th Cir. 2014) (cited in U.S. MTD Opp. at 13-14).

None of these cases has anything at all to do with the NVRA. None of them involves the federal executive's power over any aspect of our elections. All of them are First and Fourteenth Amendment cases

brought by minor candidates against state governments. Their basic teaching, consistent with the design of the Elections Clause itself, is that general power to regulate state election practices, including ballot access questions, rests with state governments in the first instance. So why are these ballot access cases being invoked here? The United States appears to have grabbed snippets from decisions like *Bullock* because they use words like "integrity" or "frivolous," but without even cursory engagement with their context or substance.

The NVRA does important work to standardize certain voter registration practices. It does not, via five words in its prefatory "Findings and purposes" section, turn the federal executive into the final arbiter of all state election rules. It has never been interpreted in this manner by any court or any legitimate voting rights plaintiff, or for that matter by the United States Department of Justice. *See* U.S. Dep't of Just. Civ. Rts. Div., *The National Voter Registration Act of 1993 (NVRA)*, (updated Nov. 1, 2024), https://perma.cc/A2DX-WMRY ("The National Voter Registration Act of 1993 (also known as the 'NVRA' or 'motor voter law') sets forth certain voter registration requirements with respect to elections for federal office."). The NVRA's voter-registration-related

purposes are not implicated in any way by the facts described in the United States' Amended Complaint, no matter how politically tawdry they may be.

The United States' total and inarguable failure to set forth a viable NVRA claim is grounds for immediate summary affirmance.[2]

### B. <u>The United States Has No Viable Claim Under the Supremacy Clause.</u>

Nothing plus nothing equals nothing. The United States' second cause of action is simply the same NVRA claim, repackaged as an

[2] Even if the NVRA did provide a federal cause of action relating to general concerns over "the integrity of the electoral process," the United States did not plead such facts here. To be sure, the Amended Complaint pleads that allies of Senator Sullivan's challenger encouraged Daniel J. Sullivan, Jr. to run for U.S. Senate, in what was, if true, a cynical and ham-fisted bid to draw votes from the Senator. Am.Compl. ¶¶ 20-22, 25, 27, 41. But it also pleads that the Division of Elections took measures to mitigate against potential voter confusion, distinctly identifying Senator Sullivan on the ballot as "Registered Republican" and "Incumbent." *Id.* ¶ 34. Moreover, because Alaska uses ranked-choice voting, *id.* ¶¶ 31, 33-34, a voter who is unsure which Sullivan is the incumbent Senator (notwithstanding that the ballot says so, and notwithstanding the outsized media coverage that the saga of the two Sullivans received) can simply rank both. Even if the voter mistakenly ranks Daniel J. Sullivan, Jr., first, the ballot will transfer to Dan S. Sullivan once Daniel J. Sullivan, Jr., a minor candidate, is eliminated. Either way, the vote ends up where the voter intended. And either way, there is no plausible basis to suggest that voter confusion might undermine the integrity of Alaska's elections.

"obstacle preemption" claim under the "Supremacy Clause," Am.Compl. ¶¶ 51-55, but just as meritless and for the same reasons.

The Supremacy Clause provides that the federal Constitution and federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, § 2. It is "a rule of priority" in instances where federal and state law conflict. *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019). But it "is not the 'source of any federal rights,' . . . and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) (citations omitted).

Congress holds the power to preempt state law, and it exercises that power by legislating. There can be no "supreme Law of the Land" without some law to start with. *See, e.g.*, *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Even when Congress exercises its broad Elections Clause power to displace state regulation of federal elections, *ITCA*, 570 U.S. at 14, it is the statute that Congress enacted that defines the scope of any potential preemption. *Id.* at 9; *accord Ex parte Siebold*, 100 U.S. 371, 392 (1880). Showing that Congress preempted state law by implication only, in the absence of express text, can be difficult under normal circumstances. And "obstacle preemption," the flavor of preemption

invoked in the Amended Complaint, is generally a very high bar. *ConocoPhillips Alaska, Inc. v. Alaska Oil & Gas Conservation Comm'n*, 177 F.4th 964, 972 (9th Cir. 2026) (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir. 2020)).

No matter the particular context or the flavor of preemption, the starting point is always the constitutional or legislative text that does the preempting. *E.g.*, *Kansas v. Garcia*, 589 U.S. 191, 202 (2020). "Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives,'" because "such an endeavor 'would undercut the principle that it is Congress rather than the courts that pre-empts state law.'" *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (citation omitted). Federal preemption can never be established merely by "[i]nvoking some brooding federal interest." *Va. Uranium*, 587 U.S. at 767.

Here, the United States points to nothing. The federal statute that the United States claimed is so manifestly obstructed as to require preemption of Alaska's ballot access regime and certification process on the eve of an election is just the same five-word snippet from the NVRA's

purposes section, again. *See* Am.Compl. ¶ 54. To say that this does little more than "[i]nvok[e] some brooding federal interest" would be charitable. *Va. Uranium*, 587 U.S. at 767. Summary affirmance is warranted on this claim, too.

### C. The United States Sought Illegal Relief.

Even if the United States had set forth something close to a valid legal theory (and it very much did not), the outlandish relief sought—blocking the certification of Alaska's U.S. Senate election and conducting an unheard-of inquisition into the intentions of individual voters, Am.Compl. ¶¶ 56-57—is unlawful. The failure to seek lawful relief is another basis for summary affirmance.

To start, indefinitely blocking the certification of a U.S. Senate election would illegally disenfranchise Alaska voters. The right to vote guarantees not just the right to cast a ballot in the selection of our public officials, but to have it counted. *See, e.g.*, *United States v. Classic*, 313 U.S. 299, 315 (1941); *see also, e.g.*, *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 (1969). Under Alaska law, certification is the final step in the process by which the people choose who will represent them—the process by which their votes are made effective. Alaska Stat.

§ 15.15.450. Indefinitely blocking certification would be a grave affront to the voting rights of all Alaskans.

Furthermore, the requested relief would violate the Seventeenth Amendment, which "directs that Senators be chosen by the people" and guarantees the "final choice of an officer" by qualified voters. *Newberry v. United States*, 256 U.S. 232, 250 (1921); *see* U.S. Const. amend. XVII. The Amendment confers "a constitutionally protected 'right' to participate in the selection of representatives, as well as a protection against interference with the privileges of suffrage—including the expectation that one's vote will be counted." *See Republican Party of State of Conn. v. Tashjian*, 770 F.2d 265, 273 (2d Cir. 1985) (quoting *Classic*, 313 U.S. at 314-15), *aff'd* 479 U.S. 208 (1986).

The relief sought would also violate the right to a secret ballot, as the district court correctly held, *Alaska*, 2026 WL 3271034, at *5-6; *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995); Alaska Const. art. V, § 3. The relief proposed in the pleadings contemplates some indefinite, unprecedented "investigation to determine whether votes cast for Daniel J. Sullivan were meant to be cast for Senator Sullivan." *E.g.*, Am.Compl. ¶ 57. What would this proposed relief entail? According to

Alaska's United States Attorney, speaking at a press conference immediately following the filing of the Amended Complaint, it would involve armed law enforcement personnel demanding that voters disclose the identity of their preferred candidate before their ballot will be counted.[3] Pursuing "election integrity" by sending armed government agents to question voters about how they chose to mark their ballots and who they *really* supported would be Orwellian and grossly illegal. *See also, e.g.*, 18 U.S.C. §§ 592, 594, 595; 52 U.S.C. § 10307(a), (b).

Finally, the *Purcell* principle is a complete and independent basis to summarily affirm. With voting already underway, the United States initiated a civil action asking a federal court to intervene in the middle of the election, preemptively block certification in violation of state law, and begin a roving inquiry into a question that the Alaska Supreme Court had already resolved with the aim of assessing which ballots must

[3] *See* U.S. Dep't of Just. (@TheJusticeDept), X (Oct. 30, 2026), https://perma.cc/4VJK-KD9V ("Federal and state law enforcement, including both the Alaska State Troopers on my right and the FBI on my left, are working to make sure that your vote counts in a way that you meant and intended it to count."). These statements are judicially noticeable. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

be discounted or changed in light of supposed voter "confusion." That chaotic proposal is the entirety of the relief sought. Am.Compl. ¶¶ 56-57.

The Supreme Court has "repeatedly" and recently "emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *E.g.*, *Scanlan v. Coal. for Open Democracy*, No. 26A512, 2026 WL 3167846, at *1 (U.S. Oct. 22, 2026) (quoting *RNC v. DNC*, 589 U.S. 423, 424 (2020) (per curiam)); *accord People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sept. 25, 2026) (rejecting federal court intervention in election-related matter already resolved by state Supreme Court in advance of 2026 midterm election). The illegal relief sought in the United States' eleventh-hour lawsuit would be an especially brazen *Purcell* violation.

## II. THE COURT SHOULD ALSO SANCTION THE UNITED STATES FOR FILING A FRIVOLOUS APPEAL.

Why did the United States file this abomination of a lawsuit? If it was genuinely concerned about the two-Sullivans issue, it could have filed a Statement of Interest in the state-court litigation in June or even sought to intervene. Why wait until the eve of the election only to initiate a federal civil action seeking dramatically illegal relief based on an indefensible NVRA theory that has absolutely no basis in law?

Let us not mince words: This lawsuit was filed at the behest of President Trump. In response to a question from the press about the filing of this litigation, President Trump stated unequivocally: “I’m the one that said do it.”[4] But the say-so—and the political purposes—of an executive official, no matter how powerful, are not the law. *See* U.S. Const. art. III. The desire of powerful officials to try to achieve some result through the legal process does not turn a frivolous legal argument into a colorable one.

This lawsuit is frivolous. It is unsupported by any case, legal principle, or arguably tenable reading of the NVRA, which is the one federal statute giving rise to the two claims asserted. Nothing in the text of the NVRA’s substantive provisions can conceivably be construed to apply to candidate qualification or election certification or to authorize investigations into the voter’s intent. No case supports treating the preamble or purposes section of a statute as a source of massive executive authority. No principle of law or free government allows holding an

[4] Aaron Rupar (@Atrupar.com), Bluesky (Oct. 23, 2026), https://perma.cc/CN37-N5DQ.

entire State's democracy hostage while roving federal agents question citizens about who they *really* wanted to vote for.

After being confronted with those and other obvious, fatal legal defects, the United States amended its complaint and doubled down. And now, with the filing of a notice of appeal, it has commenced a frivolous appeal. *See* Fed.R.App.P.38. The United States has no colorable legal basis to continue pursuing its invalid claims. The result of this appeal—affirmance—"is obvious," and the United States has no argument for reversal that is not "wholly without merit." *Convergence Corp. v. Sony Corp. of Am.*, 681 F.2d 622, 623 (9th Cir. 1982) (citation omitted); *accord In re Westwood Plaza N.*, 889 F.3d 975, 977 (9th Cir. 2018).

The professional rules that prohibit the filing of frivolous actions or appeals, or the pursuit of abusive or vexatious litigation, apply to all attorneys. Traditionally, lawyers representing the United States are held to a higher standard. *Cf. Berger v. United States*, 295 U.S. 78, 88 (1935). The continued pursuit of this litigation by attorneys for the Department of Justice is an embarrassing and sanctionable violation of professional norms. The Court should summarily affirm and then give

the attorneys for the United States notice and an opportunity to explain why fees, double costs, and any other penalties should not be assessed.

## CONCLUSION

The Court should summarily affirm and then order the United States to explain why it should not be sanctioned for filing a frivolous appeal.

DATED: November 9, 2026

Respectfully submitted,

/s/ Ari J. Savitzky

Ari Savitzky
Ming Cheung
Theresa J. Lee
Garrett Muscatel
Sophia Lin Lakin
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org
mcheung@aclu.org
tlee@aclu.org
garrettmuscatel@aclu.org
slakin@aclu.org

Cindy Woods
ACLU of Alaska Foundation
P.O. Box 90744
Anchorage, AK 99509
(907) 258-0044
cwoods@acluak.org

*Counsel for Appellees Risé Roy, Jan Jakub Grzeda, League of Women Voters of Alaska, and Common Cause*

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Local Rules 27-1(1)(d) and 32-3 because it contains 5,183 words.