No. 26-7304

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

STATE OF ALASKA et al.,

Defendants-Appellees

On Appeal from the United States District Court
for the District of Alaska
No. 3:26-cv-00376
Hon. Sharon L. Gleason

# BRIEF FOR THE UNITED STATES IN OPPOSITION TO MOTION FOR SUMMARY AFFIRMANCE

STANLEY E. WOODWARD, JR.
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Phone: (202) 514-9500

*Attorney for the Appellant*
United States of America

MICHAEL J. HEYMAN
United States Attorney
District of Alaska

E. BRYAN WILSON
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Ave, #9, Rm 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071

*Attorneys for the Appellant*
United States of America

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS** .......................................................................i

**TABLE OF AUTHORITIES** ..................................................................... ii

**BACKGROUND** ...................................................................................1

**STANDARD OF REVIEW** .......................................................................3

**ARGUMENT** .........................................................................................4

**I. This Court should apply *Munsingwear* vacatur** .....................4

**II. Even if the case is not moot, summary affirmance is not appropriate.** .......................................................................7

**III. Sanctions are not warranted.** ..................................................13

**CONCLUSION** ...................................................................................14

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Acheson Hotels, LLC v. Laufer*,
601 U.S. 1 (2023) .......... 5

*Alaska v. Daniel J. Sullivan, Jr.*,
No. S-19935 (Alaska June 29, 2026) .......... 2

*Buckley v. Valeo*,
424 U.S. 1 (1976) .......... 12

*California v. Texas*,
593 U.S. 659 (2021) .......... 7

*Chafin v. Chafin*,
568 U.S. 165 (2013) .......... 10

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) .......... 8

*Convergence Corp. v. Sony Corp. of Am.*,
681 F.2d 622 (9th Cir. 1982) .......... 15

*Council of Ins. Agents & Brokers v. Molasky-Arman*,
522 F.3d 925 (9th Cir. 2008) .......... 4

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) .......... 12

*Daniel J. Sullivan, Jr. v. Division of Elections*,
No. 3AN-26-07485CI
(Alaska Sup. Ct. June 26, 2026) .......... 2

*Davis v. United States*,
564 U.S. 229 (2011) .......... 10

*McConnell v. Critchlow*,
661 F.2d 116 (9th Cir. 1981) .......... 15

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995) .......... 12

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .......... 8

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......... 7, 8

*Republican Party of Pa. v. Boockvar*,
592 U.S. 1068 (2020) .......... 6

*Teter v. Lopez*,
125 F.4th 1301 (9th Cir. 2025) (en banc) .......... 5, 8

*Townley v. Miller*,
722 F.3d 1128 (9th Cir. 2013) .......... 9

*United States v. Classic*,
313 U.S. 299 (1941) .......... 14

*United States v. Hooton*,
693 F.2d 857 (9th Cir. 1982) .......... 8

*United States v. Munsingwear*,
340 U.S. 36 (1950) .......... 5

*United States v. Patrick*,
163 F.4th 578 (9th Cir. 2025) .......... 4

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 11

*Yazzie v. Hobbs*,
977 F.3d 964 (9th Cir. 2020) .......... 12, 13

**United States Constitution**:

U.S. Const. art. III .......... 3, 9

U.S. Const. art. VI, cl. 2 .......... 3, 7, 15

U.S. Const. amend. XVII .......... 14

**Alaska Constitution**:

Alaska Const. art. V, § 3 .......... 12

**Federal Statutes**:

52 U.S.C. § 20501(b)(3) .......... 7

**Alaska Statutes:**

§ 15.20.081(d) ........ 11

§ 15.15.230 ........ 11

**Rules**:

Fed. R. App. P. 38 ........ 16

Fed. R. Civ. P. 12(b)(1) ........ 15

Fed. R. Civ. P. 12(b)(6) ........ 15

9th Cir. R. 3-6(a)(2) ........ 4

**Other Authorities**:

Kellen Browning, *Inside Democrats' Secret Effort to Stack Alaska's Ballot*, N.Y. Times (Oct. 28, 2026) ........ 2, 3

## BACKGROUND

1. On May 16, 2026, Senator Dan S. Sullivan ("Senator Sullivan") filed to run for reelection to the United States Senate. FAC ¶ 19. On May 29, 2026, Daniel J. Sullivan filed as a candidate for election to the Senate. Dkt.43 (FAC) ¶ 20. Daniel J. Sullivan had never run for office. FAC ¶ 22. And he took several measures designed to confuse Alaska's voters into believing that he is Senator Sullivan, prompting complaints to the Alaska Division of Elections ("the Division"). FAC ¶ 23.

On June 15, the Division, through Defendant Carol Beecher, found that Daniel J. Sullivan's declaration of candidacy was not properly filed with the Division because it was not filed in order to declare a good-faith candidacy for the office of the United States Senator, but was instead filed with the purpose to confuse or mislead, and thereby compromise the ballot's fairness or neutrality. Dkt.43-1, at 2. The Division described Daniel J. Sullivan's ploy to deceive voters who intend to vote for Senator Sullivan as "utterly unprecedented" and "unlike any previously presented to the Division." *Id.* at 2.

Nevertheless, Daniel J. Sullivan sought judicial review of the Division's determination. FAC ¶ 26. A trial court held that the Division erred in excluding him. *Daniel J. Sullivan, Jr. v. Division of Elections*, No. 3AN-26-07485CI (Alaska Sup. Ct. June 26, 2026). The Alaska Supreme Court summarily affirmed and

indicated that an "opinion will be issued at a later date." *Alaska v. Daniel J. Sullivan, Jr.*, No. S-19935 (Alaska June 29, 2026). The court has yet to issue that opinion. FAC ¶ 26. As a result of the summary decision, Daniel J. Sullivan was on the ballot for the November 2026 election. FAC ¶ 28.

The New York Times has reported additional details—namely, that Alaskans For Mary (the campaign committee supporting the Democratic nominee Mary Peltola) and the Democratic Senatorial Campaign Committee orchestrated Daniel J. Sullivan's sham campaign for the purpose of misleading Alaskan voters and getting Peltola elected. As reported, "[o]peratives aligned with Mary Peltola, the Democratic nominee for Senate, spent months recruiting candidates to peel votes from Senator Dan Sullivan."[1] "[N]ot only did Ms. Peltola's team work with people trying to recruit Daniel J. Sullivan to run for Senate, but the effort was much broader." Browning, *supra*. "The group worked to coax other would-be spoilers into the race, to dilute the incumbent's support and help catapult the Democrat to victory." *Id.*

2. The United States brought this lawsuit to ensure that the State and its officers fulfill Alaska's obligation to protect the integrity of its election. On October

---

[1] Kellen Browning, *Inside Democrats' Secret Effort to Stack Alaska's Ballot*, N.Y. Times (Oct. 28, 2026), available at https://www.nytimes.com/2026/10/28/us/politics/alaska-dan-sullivan-conspiracy-peltola.html.

29, 2026, the United States filed the operative Amended Complaint, which raised one count under the National Voter Registration Act of 1993 (NVRA) and one count of obstacle preemption under the Supremacy Clause. Defendants (including intervenor-defendants) moved to dismiss. Dkts.60, 57, 55.

In an order signed November 1, 2026, the district court granted the motions to dismiss because it concluded "that the United States ha[d] failed to establish the redressability prerequisite for Article III standing." Dkt.79, at 12. The court did not reach the merits. That same day, the court entered judgment (Dkt.80), and the United States filed a notice of appeal (Dkt.81). Now, certain intervenor-defendants ("Movants") have moved for summary affirmance and sanctions.

## STANDARD OF REVIEW

This Court may summarily affirm a lower-court decision only when it "is manifest that the questions on which the decision in the appeal … depends are so insubstantial as not to justify further proceedings." 9th Cir. R. 3-6(a)(2). This Court assesses questions of justiciability, including standing and mootness, de novo. *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 930 (9th Cir. 2008). The proper interpretation of the NVRA is likewise reviewed de novo. *United States v. Patrick*, 163 F.4th 578, 582 (9th Cir. 2025).

## ARGUMENT

This Court should deny the motion to summarily affirm the district court's judgment. Instead, this Court should vacate the district court's order dismissing this lawsuit, because the case has become moot. But summary affirmance would be inappropriate regardless, because there is (at least) a substantial question as to the district court's redressability ruling—the only issue presented on this appeal. Movants' arguments about the NVRA are misplaced; this Court cannot summarily affirm on the merits (rather than Article III jurisdiction), because there was no dismissal on the merits. For similar reasons, Movants' overheated request for sanctions concerns issues not presented by this appeal and should be denied out of hand.

### I. This Court should apply *Munsingwear* vacatur.

The United States filed this appeal from the district court's order dismissing the United States' suit for lack of standing. However, as explained below, the case is now moot. Because this Court "can address jurisdictional issues in any order [it] choose[s]," it should simply hold that this case is moot, vacate the underlying order, and remand for dismissal on that ground. *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4-5 (2023) (taking that route). There is, accordingly, no need to delve into standing or the merits of the United States' claims. *Id.*

"When a case has become moot, [this Court's] normal practice is to vacate the [district court's] judgment." *Teter v. Lopez*, 125 F.4th 1301, 1309 (9th Cir. 2025) (en banc); *see United States v. Munsingwear*, 340 U.S. 36 (1950). In the district court, the United States sought an injunction preventing the State of Alaska "from certifying any result that may be impacted by voter confusion"—defined as an election result that would change if votes for Daniel J. Sullivan had instead been cast for Senator Sullivan—"pending an investigation to determine whether votes cast for Daniel J. Sullivan were meant to be cast for Senator Sullivan and any further procedures or relief [the district court] deem[ed] necessary and appropriate." FAC ¶¶50, 57. The United States also requested "any other relief" the court "deem[ed] just and proper." FAC ¶58.

That relief necessarily required "state officials to take precautionary measures now," *i.e.*, before and during the tabulation of votes, "to help ensure any voter confusion can be addressed later." Dkt.67, at 12 n.5; Dkt.66, at 15. Specifically, the United States asked the district court to "require preservation and segregation of potentially tainted ballots," Dkt.66, at 17; Dkt.67, at 19, in a manner that would allow for any necessary investigation after the election. *Cf. Republican Party of Pa. v. Boockvar*, 592 U.S. 1068, 1070 (2020) (statement Alito, J.) (describing as "modest relief" an order segregating certain ballots so that "a targeted remedy will be available" after the election).

The district court denied the United States' requested precautionary measures, and so all ballots—whether mail-in or in-person—were, in the defendants' words, "comingled [sic] in the ballot box on Election Day." Dkt.72, at 2 (explaining what would happen in the ordinary course). Those ballots cast for Daniel J. Sullivan therefore bear no information or documentation identifying who cast which votes. As the United States Attorney predicted in a press conference quoted by the district court, any effective segregation of ballots "ranking Daniel J. Sullivan w[ould] be impossible after Election Day." Dkt.79, at 16 (ellipsis omitted). The United States therefore reluctantly acknowledges that there no longer exists any means of "determin[ing] whether votes cast for Daniel J. Sullivan were meant to be cast for Senator Sullivan" and vindicating the United States' asserted injury. FAC ¶ 57.[2]

The mootness of this case is further demonstrated by Movants' reliance on the *Purcell* principle as "a complete and independent basis to summarily affirm." Mot. 22; *see Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam). The *Purcell* principle

[2] The United States also requested a declaration that "any result that may be impacted by voter confusion, as defined [in the First Amended Complaint], would violate Defendants' duties under the NVRA to 'protect the integrity of the electoral process,' 52 U.S.C. § 20501(b)(3), and be preempted under the Supremacy Clause." FAC ¶56. Because that declaration cannot now impact any action by the Defendants in a manner that would aid the United States, the request for a declaratory judgment does not change the mootness analysis. *Cf. California v. Texas*, 593 U.S. 659, 673 (2021) (asking, for standing purposes, whether "a suit for declaratory relief 'would be justiciable in this Court if presented in a suit for injunction'" (citation omitted)).

restricts federal courts' ability to enjoin state officers' conduct "in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring in grant of applications for stays). Although the United States disagrees that *Purcell* barred the relief sought below (Dkt.66, at 17), that principle applies only to injunctive relief that would impact the mechanics of an election, *see Merrill*, 142 S. Ct. at 880-81 (opinion of Kavanaugh, J.). The United States sought only forward-looking relief that was specific to the 2026 election and, for the reasons already discussed, it is too late to provide any meaningful relief.

Because the federal courts cannot now remedy the United States' injury, the case is moot, *see Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992), and vacatur is appropriate, *Teter*, 125 F.4th at 1309. For this reason alone, summary affirmance is unwarranted. *See Church of Scientology*, 506 U.S. at 12.

## II. Even if the case is not moot, summary affirmance is not appropriate.

A motion to summarily affirm "should be confined to appeals obviously controlled by precedent and cases in which the insubstantiality is manifest from the face of appellant's brief." *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (per curiam). In this case, Movants have taken the drastic step of seeking this relief before the United States has filed a word of argument. Even if this case were not moot, their request should be denied.

This appeal presents only a question about Article III standing. To establish standing, the United States must show "(1) that [it] suffered an injury in fact . . .; (2) that there is a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury will likely be redressed by a favorable decision." *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013). The district court's decision rested entirely on the redressability prong (Dkt.79, at 18), which is the only prong that Movants arguably address in their Motion for Summary Affirmance (Mot. 20-22).

Contrary to the district court and Movants, the district court could have granted effective relief at the time the United States filed this lawsuit and its notice of appeal. The United States sought an injunction preventing "Defendants from certifying any result that may be impacted by voter confusion, as defined [in the Amended Complaint], pending an investigation to determine whether votes cast for Daniel J. Sullivan were meant to be cast for Senator Sullivan and any further procedures or relief [the district court] deem[ed] necessary and appropriate to determine what the result would have been absent Daniel J. Sullivan's inclusion on the ballot." FAC ¶57. The United States also requested "any other relief" that the district court "deem[ed] just and proper." FAC ¶58. Then, in order to avoid the commingling of all ballots on Election Day, the United States moved for a preliminary injunction to require defendants to take certain "precautionary

measures"—namely preservation and segregation of potentially tainted ballots—that would make such an investigation (if necessary) possible. Dkt.66, at 8, 14-15, 17.

For standing purposes, it makes no difference whether the United States would have been entitled to any or all of this relief on the merits—relying on entitlement to requested relief, rather than whether relief would be effectual, "confus[e] weakness on the merits with absence of Article III standing." *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011). Instead, redressability is about whether the relief requested would likely redress the claimed injury. *See, e.g., Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

Here, the requested relief would have redressed the claimed injury at the time this lawsuit and the notice of appeal were filed. Segregating ballots cast for Daniel J. Sullivan was possible at those times. At the very least, mail-in ballots come with the name of the voter, A.S. § 15.20.081(d), and the district court could have ordered officials to segregate those mail-in ballots cast for Daniel J. Sullivan. In exercising its equitable powers, and consistent with the United States's request for any relief the court deemed necessary and appropriate, the court could have required whatever protective measures (both in terms of election integrity and, if warranted, voter privacy) would be necessary to remedy the alleged violation of the NVRA. Though in-person ballots (which are cast *after* identification has already been shown, A.S. § 15.15.230) may have required other measures, it was at least possible for the court

to have ordered election officials to collect and segregate any ballots cast for Daniel J. Sullivan with additional protective measures. Notably, Movants' counterintuitive suggestion that a court is powerless to intervene even if State officials are brazenly violating the NVRA—again, "standing in no way depends on the merits," *Warth v. Seldin*, 422 U.S. 490, 500 (1975)—could have unpredictable consequences in future elections.

The district court rejected the idea that any effective preservation and segregation was possible "while preserving the secrecy of the ballot." Dkt.79, at 11; *accord* Mot. 21-22. But as noted, the district court could have crafted protective measures to ensure voter privacy pending an investigation (if necessary). And in discussing secrecy of the ballot, Movants rely only on *state* law and a general reference by the Supreme Court to "the secret ballot." Mot. 21 (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995); Alaska Const. art. V, § 3); *cf. Buckley v. Valeo*, 424 U.S. 1, 237 (1976) (Burger, C.J., concurring in part and dissenting in part) (identifying the "secret ballot as a universal practice"). State law cannot, of course, stand in the way of court orders vindicating federal law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000).[3]

[3] Movants' claim (Mot. 22) that the United States sought to enlist "armed law enforcement personnel" to interrogate and intimidate voters is baseless and warrants no further response.

The precedent on which the district court relied is inapposite. *See Yazzie v. Hobbs*, 977 F.3d 964 (9th Cir. 2020). In *Yazzie*, six members of the Navajo Nation (collectively, Yazzie) "moved for a mandatory preliminary injunction that would require Arizona to count mail ballots from on-reservation Navajo Nation tribal members that are postmarked—rather than received—by election day, November 3, 2020, and received on or before November 13, 2020." 977 F.3d at 966. As this Court recognized, such a request was plagued with errors, which guaranteed "that the alleged injury [was not] redressable by a favorable decision by this court." *Id.* at 967.

First, Yazzie requested "a modified voting schedule solely for on-reservation Navajo Nation members," but such relief "[could not] be implemented because the mail ballots received and logged by the county recorder do not indicate—and Yazzie provides no way to otherwise discern—whether those ballots were cast by on-reservation Navajo Nation members." *Id.* Further, "even assuming that it [was] possible to tell whether a given mail ballot originated from the reservation and not somewhere else in the precinct," there was no way "to tell whether the ballot was cast by an enrolled member of the Navajo Nation." *Id.* Second, Yazzie's requested relief required action by nonparties, namely the United States Postal Service. *Id.* at 968.

By contrast, it was indeed possible in this case for the district court to require election officials to segregate ballots cast for Daniel J. Sullivan in a manner that would allow for later investigation. *See* pp. 9-11, *supra*. Moreover, the defendants in the case could have implemented those actions. Each named defendant plays a crucial role in Alaska's elections. FAC ¶¶12-14.

Movants' arguments before this Court fare no better. For example, they argue that the United States cannot "illegally disenfranchise voters" because "[t]he right to vote guarantees not just the right to cast a ballot in the selection of our public officials, but to have it counted." Mot. 20 (citing *United States v. Classic*, 313 U.S. 299, 315 (1941)); *see also* Mot. 21 (arguing that the Seventeenth Amendment gives "the people" the right to choose their senators). Exactly so: the purpose of this lawsuit was always to make sure that voters had the opportunity to cast a vote accurately reflecting their choice of candidate, notwithstanding the confusion caused (and intended to be caused) by Daniel J. Sullivan's campaign, egged on by Peltola's. That theme pervades the Amended Complaint from top to bottom. FAC ¶¶2-3, 5, 20-27, 34-36, 41-42, 47-50, 55.

Summary affirmance of the district court's standing decision—the only subject of this appeal—is thus not warranted. The district court never ruled on the merits of the United States' NVRA or Supremacy Clause claims. *See* Dkt.79, at 18. Yet, Movants also seek summary affirmance based on the merits. Mot. 11-20. The

questions that Movants address are thus plainly not presented by this appeal. Because the district court dismissed this case for lack of *jurisdiction* under Rule 12(b)(1) of the Federal Rules of Civil Procedure, it is impossible for this Court to "summarily affirm" on the *merits* based on Rule 12(b)(6). That would not be an affirmance at all.

**III. Sanctions are not warranted.**

Movants assert that this Court should "sanction the United States for filing a frivolous appeal." Mot. 23. The district court ignored similar requests for sanctions. And there is certainly no basis for sanctions here. "An appeal is considered frivolous in this circuit when the result is obvious, or the appellant's arguments of error are wholly without merit." *Convergence Corp. v. Sony Corp. of Am.*, 681 F.2d 622, 623 (9th Cir. 1982) (per curiam) (quoting *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981) (citations omitted)). As detailed above, the United States' challenge to the district court's standing decision—the basis for this appeal—is far from frivolous.

For the same reason, insofar as Movants' request is read as calling for sanctions regarding the claims brought by the United States in the district court (as opposed to its appeal of the standing decision below), this is not the proper forum. *See* Fed. R. App. P. 38 (allowing for "just damages" by the court of appeals when "an *appeal* is frivolous" (emphasis added)); *cf. Convergence Corp.*, 681 F.2d at 623

(sanctioning "meritless quibbles with the [district court's factual] findings"). As noted, this appeal is limited solely to redressability.

## CONCLUSION

For the foregoing reasons, this Court should hold that this case is moot, vacate the underlying order, and remand for dismissal on that ground. In all events, this Court should deny Movants' requests for summary affirmance and sanctions.

Dated: November 19, 2026

Respectfully submitted,

/s/ Stanley Woodward
Stanley E. Woodward, Jr.
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Phone: (202) 514-9500
Email: Stanley.Woodward@usdoj.gov

MICHAEL J. HEYMAN
United States Attorney

/s/ E. Bryan Wilson
Assistant U.S. Attorney
U.S. Attorney's Office
Federal Building & U.S. Courthouse
222 West Seventh Ave, #9, Rm 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Bryan.Wilson@usdoj.gov

*Attorneys for the Appellant*
United States of America