**No. 26-7304**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

STATE OF ALASKA; CAROL BEECHER, in her official capacity as Director of the Division of Elections of the State of Alaska; THE ELECTION BOARDS OF THE STATE OF ALASKA; and THE STATE BALLOT COUNTING REVIEW BOARD OF THE STATE OF ALASKA,
*Defendants-Appellees,*

and

ALASKANS FOR MARY; DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE; RISÉ ROY; JAN JAKUB GRZEDA; LEAGUE OF WOMEN VOTERS OF ALASKA; and COMMON CAUSE,
*Intervenor-Defendants-Appellees.*

On Appeal from the United States District Court for the District of Alaska
No. 3:26-cv-00376-SLG
Hon. Sharon L. Gleason, United States District Judge

**BRIEF OF AMICUS CURIAE**
**DUSTIN THOMAS HOUSE DARDEN**
**IN SUPPORT OF APPELLEES AND IN OPPOSITION TO APPELLANT'S REQUEST FOR VACATUR**

Dustin Thomas House Darden
*Pro Se Amicus Curiae*
3951 Lakehurst Circle
Anchorage, Alaska 99502
(907) 884-5784
LawHelpAK@gmail.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....3

IDENTITY, INTEREST, AND AUTHORITY TO FILE....5

RULE 29(a)(4)(E) STATEMENT....6

INTRODUCTION AND SUMMARY OF ARGUMENT....6

ARGUMENT....7

I. The Court should not vacate the district court's judgment....7

II. The judgment is correct, and the State's other grounds independently support it....9

III. Every qualified candidate may run under his own lawful name....11

IV. Alaska already has, and used, tools short of removal — as Amicus's own ballot name shows....12

CONCLUSION....14

CERTIFICATE OF COMPLIANCE (FORM 8)....15

CERTIFICATE OF SERVICE....16

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)....................12

*Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977 (9th Cir. 2015)....................10

*Bullock v. Carter*, 405 U.S. 134 (1972)....................12

*Cook v. Gralike*, 531 U.S. 510 (2001)....................12

*Dilley v. Gunn*, 64 F.3d 1365 (9th Cir. 1995)....................8, 9, 14

*Foster v. Love*, 522 U.S. 67 (1997)....................10

*Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116 (9th Cir. 2008)....................10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)....................9

*Purcell v. Gonzalez*, 549 U.S. 1 (2006)....................10

*Ringsby Truck Lines, Inc. v. W. Conf. of Teamsters*, 686 F.2d 720 (9th Cir. 1982)....................8

*State, Div. of Elections v. Sullivan*, No. S-19935 (Alaska June 29, 2026) (order)....................5, 11, 13

*Sullivan v. State, Div. of Elections*, No. 3AN-26-07485CI (Alaska Super. Ct. June 26, 2026)....................5, 11

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994)....................7, 8, 9

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)....................7

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995)....................11, 12

## Constitutional Provisions, Statutes, and Rules

U.S. Const. art. I, § 3, cl. 3....................11

U.S. Const. art. I, § 4, cl. 1....................10

Alaska Const. art. V, § 3....................9

52 U.S.C. § 20501....................10

52 U.S.C. § 20510(a)....................10

Alaska Stat. § 15.15.030....................12

Fed. R. App. P. 29 ........................................................................................ 5

## IDENTITY, INTEREST, AND AUTHORITY TO FILE

Amicus Dustin Thomas House Darden is an Alaska voter and was a candidate for United States Senate in the same 2026 election this appeal concerns. He appeared on the August 18, 2026 primary ballot as "Darden, Dustin Thomas House." He has run for local office in Anchorage and intends to run again.

Amicus took part, by leave of court, as amicus curiae in the state-court ballot-access case from which this suit grows. *Sullivan v. State, Div. of Elections*, No. 3AN-26-07485CI (Alaska Super. Ct.); *State, Div. of Elections v. Sullivan*, No. S-19935 (Alaska). The Alaska Supreme Court's June 29, 2026 order names him in footnote 1 as one of two amici who filed briefs on behalf of the candidate the court kept on the ballot. In that case he filed a sworn declaration describing how the Division of Elections shortened his own ballot name earlier in the 2026 cycle and then restored it at his request. He re-submits those facts by sworn declaration with his motion for leave.

Amicus has a direct and lasting interest in a clear rule that a qualified candidate may run under his own lawful name, and that how a name is displayed is a ballot-design matter for the State — not a ground for a federal court to stop or undo a certified election. He files under Federal Rule of Appellate Procedure 29 with an accompanying motion for leave.

## RULE 29(a)(4)(E) STATEMENT

No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund the preparation or submission of this brief. No person other than Amicus contributed money intended to fund its preparation or submission.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Twelve days before Election Day, the United States sued Alaska to stop it from certifying its U.S. Senate result — but only if the incumbent lost. Its theory was that a second candidate named Daniel Sullivan, whom Alaska's courts had ordered onto the ballot, might confuse voters. The district court dismissed the suit because no court could grant the relief sought without breaking the secret ballot. The election went forward. The condition the United States sued over came to pass. And now the United States asks this Court not to review that judgment, but to erase it.

The Court should decline. **First**, vacatur is an equitable remedy, not an automatic one. A party that chooses to give up its appeal is not entitled to have the judgment against it wiped away. **Second**, the judgment is right, and the State's other grounds — that the National Voter Registration Act is a voter-registration law with nothing to say about ballot names, and that the Elections Clause leaves these questions to the State — independently support it. **Third**, the Constitution

sets the qualifications for the Senate: age, citizenship, and inhabitancy. A name, like a hometown, a hair color, or a favorite color, is not one of them. **Fourth**, Alaska already has tools to address similar names without removing anyone: it decides how names are shown. Amicus's own ballot name proves it, and the Alaska Supreme Court's remand in the *Sullivan* case relied on exactly that kind of ballot-design decision.

## ARGUMENT

### I. The Court should not vacate the district court's judgment.

#### A. Vacatur is an equitable remedy that the party seeking it must earn.

When a case becomes moot on appeal, vacatur of the judgment below is sometimes appropriate. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950). But it is not automatic. It is "an equitable remedy," and the party asking for it must show it is entitled to that extraordinary relief. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25–26 (1994). The "principal condition" is whether the party seeking relief "caused the mootness by voluntary action." *Id.* at 24. A party who walks away from its own appeal has "voluntarily forfeited his legal remedy by the ordinary processes of appeal," and cannot ask the court to erase the judgment anyway. *Id.* at 25.

This Court applies the same rule. When the appellant has by its own act caused the dismissal of the appeal, "he is in no position to complain that his right

of review of an adverse lower court judgment has been lost." *Ringsby Truck Lines, Inc. v. W. Conf. of Teamsters*, 686 F.2d 720, 721 (9th Cir. 1982). And where the appellant's own choices played a part in the mootness, the Court does not vacate on its own motion; it leaves the equities for the district court to weigh. *Dilley v. Gunn*, 64 F.3d 1365, 1370–72 (9th Cir. 1995).

**B. The United States chose the timing of this suit and now chooses to drop it.**

Nothing about this case became moot by surprise. The United States filed suit on October 22, 2026, after the primary was over, after the general-election ballots were printed, and after early voting had begun. Its claim was always tied to one contingency: that the incumbent would lose. That contingency occurred. The United States could press its appeal. It has decided not to, because it now concludes that the margin makes its theory pointless. That is a voluntary choice, and under *Bancorp* and *Ringsby* it weighs against vacatur.

It is also fair to note that the State told the district court, before the election, that the relief requested could not redress anything once ballots were cast, because no one can learn why a voter marked a ballot without breaking ballot secrecy. Defs.' Mot. to Dismiss First Am. Compl., D. Ct. Dkt. 55 at 19–21. The district court agreed. Order Dismissing Action, D. Ct. Dkt. 79. The United States does not get to keep that ruling off the books simply because the election confirmed what the State said.

### C. The public interest favors leaving the judgment in place.

"Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants." *Bancorp*, 513 U.S. at 26 (citation omitted). That is especially true here. The judgment tells future litigants that federal courts will not order ballots segregated or certification halted on a theory that cannot be tested without exposing how people voted. Alaska's Constitution guarantees that "[s]ecrecy of voting shall be preserved." Alaska Const. art. V, § 3. Erasing the judgment would invite the same suit in the next close race.

Leaving the judgment in place also costs the United States nothing unfair. The dismissal was for lack of jurisdiction and without prejudice. Order Dismissing Action, D. Ct. Dkt. 79 at 19. And vacatur here would send the wrong signal to Alaska voters, who have already cast their ballots and whose result the Division is about to certify. The Court should dismiss the appeal and leave the judgment standing, or summarily affirm. At most, under *Dilley*, any request for vacatur belongs in the district court.

## II. The judgment is correct, and the State's other grounds independently support it.

The district court dismissed because the United States could not show its injury was redressable. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). It found no "workable plan" for segregating ballots cast for one candidate

and investigating them without violating the secret ballot. Order Dismissing Action, D. Ct. Dkt. 79 at 14–16. It also recognized that federal courts should not change state election rules on the eve of an election. *Id.* at 16–17; *see Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). Those rulings are correct.

This Court may affirm on any ground supported by the record. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). The State's motion to dismiss offers two more, each sufficient on its own.

**The NVRA does not reach ballot names.** The National Voter Registration Act is a voter-registration law. Every duty it imposes on states concerns registering voters and keeping accurate rolls. D. Ct. Dkt. 55 at 9–12. The United States relied on a line in the Act's statement of purposes, 52 U.S.C. § 20501(b)(3), paired with the Act's enforcement clause, 52 U.S.C. § 20510(a). But statements of purpose do not create enforceable duties. *Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977, 987 (9th Cir. 2015). Nothing in the NVRA speaks to how candidates are listed, how ballots are designed, or when results are certified.

**The Elections Clause leaves this to Alaska.** The Constitution gives the States the first responsibility for "[t]he Times, Places and Manner of holding Elections for Senators," subject to laws Congress actually passes. U.S. Const. art. I, § 4, cl. 1; *Foster v. Love*, 522 U.S. 67, 69 (1997). Congress has passed no law about candidates who share a name. The United States asked the courts to write

one. That is not a court's job, and it is certainly not the job of the Executive Branch acting without Congress. D. Ct. Dkt. 55 at 21–24.

## III. Every qualified candidate may run under his own lawful name.

The Constitution sets three qualifications for a U.S. Senator: age thirty, nine years of citizenship, and inhabitancy in the State. U.S. Const. art. I, § 3, cl. 3. Neither a State nor the federal government may add to that list. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827 (1995). The Alaska Superior Court reinstated Daniel J. Sullivan for exactly that reason: the Division had relied on a requirement found nowhere in those qualifications or in Alaska law. *Sullivan v. State, Div. of Elections*, No. 3AN-26-07485CI (Alaska Super. Ct. June 26, 2026). The Alaska Supreme Court affirmed. *State, Div. of Elections v. Sullivan*, No. S-19935 (Alaska June 29, 2026) (order).

A name is not a qualification. Neither is a middle initial, a hometown, a hair color, or a favorite color. Amicus takes no position on any candidate's motives; the Alaska courts have already decided the ballot-access question under Alaska law. The point is simpler. If a federal court could freeze an election result because a winning or losing candidate shares a name with someone else on the ballot, every candidate named Smith, Johnson, Nguyen, or Sullivan would run under a cloud that no voter put there.

Restrictions on who may appear on the ballot also burden voters, not just candidates, because they limit the choices voters have. *Anderson v. Celebrezze*, 460 U.S. 780, 786–88 (1983). A State has a real interest in avoiding voter confusion, *Bullock v. Carter*, 405 U.S. 134, 145 (1972), but that interest is met by fair ballot design and voter information — not by using the ballot to handicap a candidate or dictate an outcome. *Cook v. Gralike*, 531 U.S. 510, 523–26 (2001); *Thornton*, 514 U.S. at 833–34. The relief the United States sought — halting certification only if one favored candidate lost — is the opposite of a neutral rule.

## IV. Alaska already has, and used, tools short of removal — as Amicus's own ballot name shows.

Alaska law tells the Division how candidate names appear on the ballot. *See* Alaska Stat. § 15.15.030. In practice, that means the Division decides how a name is displayed, and it can and does change that display when the facts call for it.

Amicus knows this first-hand. After he filed for U.S. Senate, the Division notified him on April 7, 2026 that his name would appear as "Darden, Dustin T." That is not his name. His full legal name is Dustin Thomas House Darden, and other people share the shorter form. On April 19, 2026, he objected in writing to Director Beecher and asked that his full name be used. The Division agreed. He appeared on the August 18 primary ballot as "Darden, Dustin Thomas House." Darden Decl. ¶¶ 3–7 (filed with the motion for leave).

Amicus put those facts before the Alaska courts by sworn declaration in the *Sullivan* case. Darden Decl. ¶ 8. The Alaska Supreme Court then affirmed the order keeping Daniel J. Sullivan on the ballot, and "remanded for the Division of Elections to determine, in the first instance, how appellee Sullivan shall be listed as a candidate within the confines of existing Alaska ballot design law." *State, Div. of Elections v. Sullivan*, No. S-19935 (Alaska June 29, 2026) (order); *see also* D. Ct. Dkt. 55 at 4–5 & nn.15–16. Amicus does not claim the court adopted his declaration; its full opinion has not yet issued. But the remand rests on the same principle his experience shows: *how a name is listed* is a ballot-design question the State answers, and it is a different question from *whether a qualified candidate may run*.

The Division then did exactly what the remand contemplated. It distinguished the two candidates by middle initial, by "Jr.," by "Dan" versus "Daniel," by party label, and by the word "Incumbent." D. Ct. Dkt. 55 at 5–7; Order Dismissing Action, D. Ct. Dkt. 79 at 4–5. No one challenged that design before the primary or the general election. D. Ct. Dkt. 55 at 6, 19. The system worked as designed: the State addressed the name question through ballot design, the courts protected ballot access, and the voters decided. There is nothing left for a federal court to fix, and nothing in the judgment below that needs to be erased.

## CONCLUSION

The Court should deny the United States' request to vacate the district court's Order Dismissing Action and judgment. The Court should dismiss the appeal and leave the judgment in place, or summarily affirm. In the alternative, any question of vacatur should be remanded to the district court to weigh the equities under *Dilley v. Gunn*.

DATED: November 20, 2026

Respectfully submitted,

/s/ Dustin Thomas House Darden
Dustin Thomas House Darden
*Pro Se Amicus Curiae*
3951 Lakehurst Circle
Anchorage, Alaska 99502
(907) 884-5784
LawHelpAK@gmail.com

## CERTIFICATE OF COMPLIANCE (FORM 8)

9th Cir. Case Number: 26-7304

I am the amicus curiae filing this brief. This brief contains 2,256 words, including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5) and Ninth Circuit Rule 32-1 (one-half the length of a principal brief, or 7,000 words).

/s/ Dustin Thomas House Darden
Date: November 20, 2026

## CERTIFICATE OF SERVICE

I certify that on November 20, 2026, I electronically submitted the foregoing Brief of Amicus Curiae Dustin Thomas House Darden with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the Court's Electronic Document Submission System (EDSS). The Clerk of Court will docket the filing in the Appellate Case Management System (ACMS), and all parties in this case, who are registered ACMS users, will be served through ACMS.

DATED: November 20, 2026

Respectfully submitted,

/s/ Dustin Thomas House Darden

Dustin Thomas House Darden
*Pro Se Amicus Curiae*
3951 Lakehurst Circle
Anchorage, Alaska 99502
(907) 884-5784
LawHelpAK@gmail.com